599 A.2d 1236

**Robert T. EMMET**

**v.**

**W. Marshall RICKERT.**

**No. 501, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Jan. 8, 1992.

Certiorari Denied March 10, 1992.

94

Robert T. Emmet, Annapolis, for appellant.

Edward R.K. Hargadon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Glen Burnie, for appellee.

Argued before MOYLAN, MOTZ and HARRELL, JJ.

MOTZ, Judge.

The Motor Vehicle Administration ("MVA") is statutorily required to suspend the driver's license and vehicle registrations of certain judgment debtors, if properly requested to do so by a judgment creditor. The question presented by this case is whether this statute is applicable when the

cause of action giving rise to the judgment involves not a motor vehicle accident but, instead, is based on breach of a contract for improper repair of a motor vehicle. We hold that it is not; MVA's suspension authority applies exclusively to unpaid judgments in actions involving motor vehicle accidents.

(i)

In 1984, appellant, Robert T. Emmet ("Emmet"), sued Rufus J.L. Beebe in the District Court for Anne Arundel County for Beebe's breach of contract to repair Emmet's road tractor. On December 13, 1984, judgment was entered in Emmet's favor. Over the next five years, Emmet was unsuccessful in his attempts to collect the $9,900 judgment from Beebe.

On November 30, 1989, Emmet requested that MVA, pursuant to Md.Transp.Code Ann. § 17–204 (1987 Repl. Vol.),[1] suspend Beebe's driver's license and the registration of all vehicles owned by Beebe. As required by § 17–202, Emmet submitted a certified copy of the judgment and a document entitled "Certificate of the Facts Relative to Judgment" to MVA. Emmet crossed out the portion of the certificate of facts which asked for the date of the accident and, in the space provided, wrote "Re: contract action arising out of maintenance & repair of motor vehicle."

On January 3, 1990, an MVA official notified Emmet that MVA would not take action on his case, explaining that "We can only take suspension action on judgments that were as a result of motor vehicle accident damages." On March 7, 1990, Emmet filed a complaint for Writ of Mandamus to compel appellee, W. Marshall Rickert, the Administrator of MVA, to enforce § 17–201 and § 17–204 "by suspending the vehicle registration and driver's license" of Beebe. Both Emmet and MVA moved for summary judgment and on January 28, 1991, the Circuit Court for Anne Arundel

---

1. All statutory references herein are to Md.Transp.Code Ann. (1987 Repl.Vol. and 1991 Cum.Supp.), unless otherwise noted.

County (Cawood, J.) granted MVA's motion. The trial court held that MVA does not have the authority to suspend a person's license or registration on the basis of judgments resulting from a failure to make repairs on a vehicle.

(ii)

The essence of Emmet's argument is that MVA's statutory duty to suspend the driver's licenses and car registrations of judgment debtors, which is set forth in § 17–201, *et seq.,* is not confined to judgment debtors in actions involving motor vehicle accidents. He heavily relies upon the "plain language" of § 17–204 and § 17–201. Section 17–204 provides as follows:

Except as otherwise provided in this subtitle, on receipt of a certified copy of a judgment and a certificate of facts, the Administration shall suspend:

(1) The license to drive of the judgment debtor; and

(2) The registration of all vehicles owned by the judgment debtor and registered in this State.

Section 17–201 defines "judgment" as follows:

In this subtitle, "judgment" means any final judgment resulting from:

(1) A cause of action for damages arising out of *the ownership, maintenance, or use on any highway or other property open to the public of any vehicle of a type required to be registered in this State;* or

(2) A cause of action on an agreement of settlement for damages arising out of the ownership, maintenance or use on any highway or other property open to the public of any vehicle of a type required to be registered in this State.

(emphasis added.) Emmet points out that this definition "nowhere ... mention[s] the occurrence of an accident as a requirement for inclusion on the word, judgment." He maintains the legislature has "specified at least two categories [of judgments] in which a[n] accident might not have happened: ownership and maintenance." Thus, he argues the plain meaning of the statute requires the conclusion

that, at his request, MVA must suspend the license and registration of a mechanic who has improperly maintained, *i.e.,* repaired, Emmet's car and failed to pay the resulting judgment.[2]

■■■ The difficulty with Emmet's argument is that the " 'meaning of the plainest language' " is controlled by the context in which it appears; even when the words of a statute carry a definite meaning, a court is not " 'precluded from consulting legislative history as part of the process of determining the legislative purpose or goal' " of the law. *Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346 (1990) (*quoting Wilde v. Swanson,* 314 Md. 80, 92, 548 A.2d 837 (1988)). Therefore, in attempting to glean legislative intent from the words of the statute, a court should read statutory words in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence. *See Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126 (1989). Moreover, the Court of Appeals has held that when the literal words of a statute result in a construction clearly not contemplated by the legislature, the literal meaning should not be adopted. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514, 525 A.2d 628 (1987).

Accordingly, we turn to the context and legislative history of § 17–201.

### (iii)

■■■ Subtitle 2 of Title 17 of the Transportation Article is the "Nonpayment of Judgments" portion of a statute, titled "Vehicle Laws—Required Security." Title 17 is the mechanism for insuring that the necessary financial responsibility is demonstrated by persons who wish to drive or own vehicles in this state. Subtitle 2 specifically relates to the

---

**2.** The circuit court rejected this argument, finding this construction of the statute "totally strained" and concluding that in its view "the word 'maintenance' clearly refers to maintaining a car on the highway, not repairing it." We reach the same result, albeit on somewhat different grounds.

consequences of nonpayment of certain judgments by the drivers and owners of vehicles. Section 17–201 defines "judgment" for the exclusive purpose of Subtitle 2. Because § 17–201 is *solely* a definitional statute, it cannot stand alone; its context is particularly important.

That context, Subtitle 2, is comprised of nine sections. Some of these sections contain specific language indicating their applicability only to judgments resulting from motor vehicle accidents. For example, in § 17–206(b)(2), there is an exception to a suspension if the insurer for the vehicles goes into insolvency, reorganization or liquidation after "*the accident* involving the owner or driver." Similarly, § 17–208(b) provides:

> A payment made in settlement or any claim because of bodily injury, death, or property damage *arising from the accident* shall be credited in reduction of the payment required by subsection (a)(1) of this section.

(emphasis added.)

The reference to "the accident," as opposed to "an accident," in both of these statutes is an indication that the legislature intended that only unsatisfied judgments resulting from accidents would fall within the ambit of these statutes. Because these statutes are in the same subtitle as § 17–201, this would seem to suggest that such an interpretation was the legislative intent with regard to § 17–201. On the other hand, as Emmet points out, this language in § 17–206(b)(2) and § 17–208(b) also demonstrates that when the legislature intended to confine judgment to one arising from "the accident," it was perfectly capable of doing that. Its failure to do so in § 17–201 may suggest that it did not intend to so limit "judgment" in that statute. Another provision of Subtitle 2, § 17–205, however, indicates that this is not the case.

Section 17–205 identifies an exception to MVA's authority to suspend a judgment debtor's license and registration. Specifically, § 17–205 states:

The Administration may not suspend a license or registration under this subtitle if the judgment arose out of an accident caused by a vehicle that, at the time of the accident:

(1) Was owned or leased by the United States; this State, or any political subdivision of this State; and

(2) Was operated with the permission of its owner or lessee.

Two interpretations of this language, which speaks solely in the context of accidents but which is expressly applicable to the entire subtitle, are possible: (1) § 17–205 totally excludes governmental entities from MVA suspension authority, *or* (2) § 17–205 excludes governmental entities from MVA suspension authority when judgments arise from accidents but not in any other situation.

If Emmet's interpretation of § 17–201 is accepted, then § 17–205 must be read in the second manner, *i.e.*, to exclude MVA suspension authority *only* in cases involving accidents and not in any others. If, however, § 17–201 itself is construed to apply solely to judgments arising out of accidents, then § 17–205's exclusion is total, *i.e.*, government entities are never subject to MVA's suspension authority. There seems to be no reason for providing a government entity exclusion for judgments resulting from accidents and not providing it for other judgments. That is, the policy considerations which led the General Assembly to exclude governmental entities from the suspension authority of MVA would seem to apply with equal force to judgments resulting from accidents and other judgments. Accordingly, we believe consideration of the context of § 17–201 suggests that the legislature intended to confine its definition of judgment to those judgments arising out of motor vehicle accidents.

### (iv)

The legislative history of § 17–201 confirms this conclusion. An act establishing the authority of the then Commissioner of Motor Vehicles to suspend licenses and registra-

tions for nonpayment of judgments was originally enacted in 1931. *See* 1931 Md.Laws Ch. 498. In that year, the General Assembly adopted 18 new sections of the Annotated Code of Maryland (1924 edition) entitled "Licenses" and subtitled "Motor Vehicles." *See* Md.Ann.Code Art. 56, §§ 187–187Q (1935 Supp.). The General Assembly specifically stated that the purpose of this legislation was to provide "for the revocation of the license of an operator or chauffeur and the registration certificate of the owner of a motor vehicle, under certain conditions, *if any final judgment for personal injuries, and/or any final judgment for property damage in excess of fifty dollars ($50.00) caused by the negligent operation of such motor vehicle* by such operator or chauffeur remains unsatisfied ..." 1931 Md.Laws Ch. 498 (emphasis added). That legislation specifically provided, in relevant part, that:

> The operator's and/or chauffeur's license and all of the registration certificates of any person, in the event of his failure within thirty (30) days thereafter, to satisfy any judgment ... *for damages on account of personal injury, including death, or damage to property in excess of fifty dollars ($50.00) resulting from the ownership, maintenance, use or operation hereafter of a motor vehicle* shall be forthwith suspended by the Commissioner upon receiving a certified copy or transcript of such final judgment ...

Md.Ann.Code Art. 56, § 187B (1935 Supp.) (emphasis added).

Thus, it is clear that when the statute was originally enacted, the legislature intended to and in fact did provide motor vehicle authorities with the statutory power and mandate to suspend licenses and registrations of judgment debtors *only* in cases resulting in "personal injuries" or "property damage ... caused by the negligent operation of [the] motor vehicle." 1931 Md.Laws Ch. 489 (statement of purpose). This original definition of judgment was recodified without substantive amendment on a number of occa-

sions.[3] On each occasion, reference is made to the cause of action underlying the unpaid judgment as arising from loss of services due to bodily injury or death, or injury or destruction of property caused by negligent operation of a motor vehicle.

In 1975, the General Assembly re-wrote the law governing the financial responsibility of owners and drivers. *See* 1975 Md.Laws Ch. 54. The legislature did not state that the purpose of the amendment was to broaden significantly the prior legislation. Rather, the purpose is stated to be simply:

> providing certain procedures and penalties for failing to satisfy judgments arising *out of the ownership or use of vehicles,* ... relating generally to the financial responsibility and required security for the ownership and operation of vehicles in Maryland ...

*Id.* (emphasis added.) The word "maintenance" is not included in the Act's statement of purpose. For the first time, however, the "maintenance" language appears in the legislation. Judgment is defined as a final judgment resulting from "a cause of action arising out of the ownership, maintenance or use upon a highway ... for damages, including damages for loss of services, because of bodily injury to or death of any person, or for damages because of injury to or destruction of property ..." Md.Ann.Code Art. 66½, § 7–201 (1975) (repealed and recodified at Md.Transp. Code Ann. § 17–201 (1987)). Thus, although removing the "negligent operation of the motor vehicle" language, the General Assembly clearly appears to have retained its original intent to limit the scope of this statute to judgments arising from claims for damages because of personal injury

---

3. *See* 1937 Md.Laws Ch. 30 (codified at Art. 56, § 187B); 1943 Md. Laws Ch. 1007 (codified at Art. 66½, § 1–110); 1950 Md.Laws Ch. 22 (codified at Art. 66½, § 1–117); 1953 Md.Laws Ch. 17 (codified at Art. 66½ § 1–119); 1964 Md.Laws Ch. 81 (codified at Art. 66½, § 1–119); 1966 Md.Laws Ch. 523 (codified at Art. 66½ § 1–119); and 1970 Md.Laws Ch. 534 (codified at Art. 66½, § 7–201).

or "injury to or destruction of property," *i.e.,* not to include damages for breach of contract.

In 1977, the legislature recodified the Maryland motor vehicle laws and, in so doing, enacted the current version of § 17–201(1). *See* 1977 Md.Laws Ch. 14. In the new definition of judgment, the language identifying the damages necessary in order for an action to be the predicate for the suspension powers ("including damages for loss of services, because of bodily injury to or death of any person, or for damages because of injury to or destruction of property, including loss of use thereof") was eliminated. The revisor's note, however, states that "this subsection is new language derived *without substantive change from* Art. 66½, § 7–201." 1977 Md.Laws Ch. 14. (emphasis added). The Court of Appeals, interpreting precisely this section and this revisor's note, has directed that, although "the revisor's notes are not law and may not be considered to have been enacted as part of the act, ... they are entitled to weight." *Rentals Unlimited v. Administrator,* 286 Md. 104, 109, 405 A.2d 744 (1978). The *Rentals* court went on to hold that the revisor's note established that another provision of the successor statute meant the same thing as its predecessor even though it did not have the express language of the earlier statute. *Id.* Accordingly, here too, while the current version omits former express language, in light of the revisor's note, there is no reason to believe that the meaning of the statute has changed.

The most thorough judicial discussion of the legislative intent of the motor vehicle nonpayment of judgments law is found in *Rentals.* There, the Court of Appeals held that MVA may suspend the license and registration of a Maryland resident who failed to satisfy a judgment rendered by a court in the District of Columbia as a result of a vehicular accident. With respect to the legislative intent behind the nonpayment of judgment provisions, the Court said:

Title 17, "Vehicle Laws—Required Security," is the *most recent formulation of a consistent legislative policy* designed to make certain that those who own and operate

vehicles in Maryland are financially responsible. *The legislative objective* of this statute, like the objective of its predecessors, *is* to achieve the remedial purpose of *protecting the public from the reckless operation of vehicles by financially irresponsible drivers by assuring that operators and owners of vehicles against whom judgments might be entered on account of negligent driving, are financially able to pay damages to persons injured by such negligence.* *Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 534 [212 A.2d 311] (1965); *National Indemnity Co. v. Simmons,* 230 Md. 234, 238–39 [186 A.2d 595] (1962); *Keystone Mutual Casualty Co. v. Hinds,* 180 Md. 676, 679 [26 A.2d 761] (1942). To accomplish that purpose fully, the MVA must be authorized to suspend the license and registration of any financially irresponsible vehicle owner or driver whether that person's negligent driving occurred in Maryland or in some other jurisdiction.

(emphasis added.) *Rentals,* 286 Md. at 110, 405 A.2d 744 (footnote omitted). *See also Harrison v. MVA,* 302 Md. 634, 648, 490 A.2d 694 (1985) (legislative purpose of law which allows MVA to suspend driving privileges of uninsured motorist until outstanding judgment is paid is to provide "for the welfare of the public and for the correction or rectification of offenders against the health and security of the public"). Thus, both the legislative history of § 17–201 and prior judicial interpretation of that history support the conclusion that the legislature intended the nonpayment of judgment law to apply *only* to judgment debtors whose debts emerged from vehicular accidents.

(v)

In sum, the legislative context and history of § 17–201 require the conclusion that this statute is only applicable when the cause of action giving rise to the judgment involves a motor vehicle accident. Since the judgment on which Emmet seeks MVA action does not qualify as such, we affirm the holding of the court below. Because this is

an issue of public importance, the resolution of which will benefit the MVA, we exercise our discretion to direct that the costs be equally divided between the parties.

JUDGMENT AFFIRMED.

COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY APPELLEE.