647 A.2d 1293

**William Lloyd BARR**

v.

**STATE of Maryland.**

**No. 92, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 30, 1994.

---

Courtland K. Townsend, Jr., Ocean City, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on the brief) Baltimore, for appellee.

Argued before WILNER, C.J., and WENNER and HOLLANDER, JJ.

WILNER, Chief Judge.

Following a traffic accident in Ocean City that left a pedestrian seriously injured, appellant was charged with driving while intoxicated, driving under the influence of alcohol and

drugs, failure to stop at the scene of an accident involving bodily injury, failure to remain at the scene, and failure to render reasonable assistance to an injured person. The case was transferred to circuit court following appellant's request for a jury trial.

On December 2, 1993, appellant pled guilty to driving under the influence; the other charges were *nol prossed.* The court accepted the plea and sentenced appellant, as a second offender, to one year imprisonment, with all but 60 days suspended. He was also fined $1,000 and placed on supervised probation for a period of two years. As special conditions to the probation, the court ordered that appellant (1) attend AA meetings once a week; (2) abstain from consuming or possessing alcoholic beverages; (3) submit to random urinalysis; and (4) refrain from operating a motor vehicle throughout the entire term of his probation.[1]

On January 3, 1994, appellant filed a motion under Md. Rule 4–345(a) to correct his sentence. In that motion, he argued that the $1,000 fine exceeded that permitted under Md. Transp.Code Ann., § 27–101(f) and that the special condition of his probation prohibiting him from operating a motor vehicle during the two-year term of his probation was illegal under our decision in *Towers v. State,* 92 Md.App. 183, 607 A.2d 105 (1992). After a hearing, the court granted appellant's motion with respect to the fine but denied it as to the special driving provision.

On appeal from the partial denial of his motion to correct the sentence, appellant presents two questions for our review:

"1. Whether the imposition by the trial court of the special condition of probation prohibiting a defendant from operating a motor vehicle is an unlawful usurpation of authority

---

1. This special condition was to be enforced throughout the entire two-year probationary period even if appellant possessed a valid driver's license.

delegated by the General Assembly to the Motor Vehicle Administration of Maryland, and is therefore illegal.

2.  Whether the relief sought by this appeal is available under the Post–Conviction Procedure Act, Art. 27 Sec. 645A, Md.Ann.Code, . . . thereby barring direct appeal from denial of the Motion to Correct an Illegal Sentence."

Because we agree with the State that the denial of a motion to correct an alleged illegal sentence is not directly appealable, we shall dismiss this appeal pursuant to Md.Rule 8–602(a)(1) without reaching the merits of appellant's claim.

In 1958, the Legislature enacted the Post Conviction Procedure Act (PCPA), for the purpose of providing a new, statutory remedy for persons seeking to attack, other than by direct appeal, a criminal conviction or a sentence of death or imprisonment imposed as the result of such a conviction. As first enacted, the statute (art. 27, § 645A(a)) permitted any person convicted of a crime *and incarcerated* under a sentence of death or imprisonment to challenge the legality of the conviction or the sentence on any ground that otherwise would be cognizable under a writ of *habeas corpus, coram nobis,* "or other common law or statutory remedy," subject to certain exceptions set forth in the statute. The law also permitted a person to seek appellate review if the trial court denied relief.

In what was initially enacted as § 645A(b) and is now codified as § 645A(e), the Legislature made clear that this new remedy did not supplant the existing common law and statutory remedies for collaterally challenging convictions or sentences. It did, however, abrogate the right to seek appellate review from the denial of relief under those existing, alternative mechanisms, at least to the extent that comparable relief was available under PCPA. Section 645A(b) provided, in relevant part, that no further appeals would be allowed in *habeas corpus* or *coram nobis* cases "or from other common law or statutory remedies which have heretofore been available for challenging the validity *of incarceration* under sentence of death or imprisonment. . . ." (Emphasis added.)

As the italicized language indicates, the initial legislative intent was to make the new procedure available only to persons who were actually incarcerated. They alone were afforded the new remedy. The *quid pro quo* for that additional remedy, including, as we have indicated, the right to seek appellate review if relief was denied, was the loss of any right to seek appellate review in connection with the preexisting alternative remedies.

In 1965, the Legislature amended PCPA in two principal respects. It amended § 645A(a) to permit persons on parole or probation to seek relief under the Act. As amended, and as the section now reads, any person convicted of a crime and *either* incarcerated under sentence of death or imprisonment *or* on parole or probation may collaterally challenge the conviction or the sentence on any ground which would otherwise be available under a writ of *habeas corpus, coram nobis*, or other common law or statutory remedy. The second amendment was to what had then become § 645A(e). There, the Legislature clarified that its abrogation of the right to seek appellate review from the denial of *habeas corpus* applied only where the writ was sought to challenge the legality of a conviction or sentence of death or imprisonment. *See Gluckstern v. Sutton*, 319 Md. 634, 574 A.2d 898 (1990).

Unfortunately, the Legislature omitted in that 1965 enactment to conform the balance of the language in subsection (e) to the new language added to subsection (a), allowing persons on parole or probation to seek relief under the PCPA. It is that omission that appellant seizes upon in pressing this appeal. He does not dispute that he has the right to seek relief under § 645A(a), in that, as a probationer, he is challenging the legality of a part of his sentence. But because subsection (e) continues to speak in terms of remedies challenging "the validity *of incarceration* under sentence of death or imprisonment," he urges that his right of appeal from the denial of a motion to correct an illegal sentence has not been affected. In other words, he claims that subsection (a) applies, but subsection (e) does not.

In *Wilson v. State*, 227 Md. 99, 101, 175 A.2d 775 (1961), the Court held that a motion to correct an illegal sentence filed under the predecessor rule to Rule 4–345 constituted a "statutory remedy" within the meaning of PCPA. In *Valentine v. State*, 305 Md. 108, 501 A.2d 847 (1985), the Court, in a 4–3 decision, held that such a motion is in the nature of a collateral attack, that an appeal from its denial is not a direct appeal from the original sentence, and that "[t]he refusal of a trial judge to correct an illegal sentence can only reach the appellate courts when the procedures of the [PCPA] are followed." *Id.* at 120, 501 A.2d 847. The Court affirmed the decision of this Court dismissing Valentine's appeal from the denial of his motion to correct an allegedly illegal sentence on the ground that the appeal was not allowed by law. Appellant believes that his case is not controlled by *Valentine*, but rather by *Randall Book Corp. v. State*, 316 Md. 315, 558 A.2d 715 (1989).

In *Randall*, the corporate defendant was fined $500 on each of 116 convictions for displaying certain obscene material for advertising purposes. The defendant later moved to vacate or amend the cumulative sentences on the ground that they were unlawful and, when that motion was denied, he appealed. The Court allowed the appeal, distinguishing *Valentine* on the ground that, because only a fine was involved and not a sentence of death or imprisonment, the statutory remedy under PCPA was not available to *Randall*.

Neither *Valentine* nor *Randall* directly controls this case, which seems to fall in a gap between them. *Valentine* involved a challenge to a sentence of imprisonment, and the Court's ruling stemmed essentially from the force of § 645A(e), as construed in earlier cases, abrogating appellate review of alternative collateral attacks on such sentences. As we have observed, § 645A(e) does not expressly include within that abrogation challenges by persons on parole or probation. *Randall*, on the other hand, was based on the inapplicability of PCPA itself. Allowance of the appeal was not grounded on anything in § 645A(e), but rather on the limitation in § 645A(a). As we have indicated, that also is not the case

here; appellant is within the ambit of § 645A(a)—expressly so.

The precise and narrow question is strictly one of legislative intent. In enacting the 1965 amendment, did the Legislature intend to permit a person on parole or probation to utilize PCPA as a means of attacking an illegal sentence—including an illegal condition attached to the probation—but not to restrict his right to seek appellate review if he chose to use an alternative method of attacking the sentence and was unsuccessful?

Although there are many canons of statutory construction, the overriding one is the directive to ascertain and, if at all possible, to effectuate the legislative intent. This has been expressed as the "cardinal rule," the "primary goal" of the court. *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994); *Comptroller v. Jameson*, 332 Md. 723, 732, 633 A.2d 93 (1993). All other canons, including the one directing that the words used in the statute be read literally, are subject to that governing imperative. *Smith v. Higinbothom*, 187 Md. 115, 48 A.2d 754 (1946); *Emmet v. Rickert*, 90 Md.App. 93, 599 A.2d 1236, *cert. denied*, 325 Md. 619, 602 A.2d 710 (1992). In effectuating that rule, courts must read all parts of a statute together, with a view toward harmonizing the various parts and avoiding both inconsistencies and senseless results that could not reasonably have been intended by the Legislature.

The purpose behind § 645A has been determined and enunciated by the Court of Appeals on numerous occasions. It was to consolidate into one statutory procedure all the remedies previously available for collaterally challenging the validity of a criminal conviction or sentence. *Brady v. State*, 222 Md. 442, 160 A.2d 912 (1960), *aff'd*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Zimmerman*, 261 Md. 11, 273 A.2d 156 (1971). Although the Legislature left those preexisting procedures intact at the trial level, its clear, unmistakable intent was to limit appellate review to actions

under the new statute, at least to the extent that the statute applied. *Gluckstern v. Sutton, supra,* 319 Md. 634, 574 A.2d 898. It would be anomalous, at best, absurd at worst, to attribute to the General Assembly an intent to limit the right of someone under sentence of death or actual confinement to seek appellate review when an alternative form of collateral attack proves unsuccessful but not to limit that right when pursued by someone on parole or probation. Yet that is precisely the result that would obtain if appellant's construction prevails.

Although, for the reason noted, *Valentine* is not precisely on point, we think it properly expresses the policy that should be applied here—that if relief is available under PCPA, as it is to appellant, there is no right to seek appellate review from the denial of an alternative form of post conviction relief. That policy avoids the senseless result that would otherwise obtain and preserves the essential integrity of PCPA.[2] We therefore

---

**2.** That construction could, arguably, result as well from the effect of *Valentine* itself. Appellant's argument rests on the assumption that, but for PCPA, he would have the right to seek appellate review of the denial of a motion to correct an illegal sentence. That argument rests upon language in *Roberts v. Warden,* 206 Md. 246, 111 A.2d 597 (1955), which, in turn, relied on a statement in *Madison v. State,* 205 Md. 425, 109 A.2d 96 (1954), and upon language in *Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981), all to the effect that an appeal would lie from the denial of such a motion, even if the motion was made more than 30 days after sentence had been imposed. In *Valentine,* however, the Court held that the statement in *Madison* was dicta and clearly rejected the notion that such an appeal would lie. Indeed, the *Valentine* Court declared that the earlier comment that the refusal to correct an illegal sentence is appealable no matter when the correction request is made *"was* in error." 305 Md. at 119, 501 A.2d 847 (emphasis added). This indicates that the Court was not simply changing the law to meet some new need or circumstance but rather declaring the earlier pronouncement to have been in error when made. It would appear, then, that, at least since 1958, if not earlier, an appeal would *not* properly lie from the denial of such a motion. Under this theory, appellant's argument founders not upon an expanded construction of § 645A(e) but upon the falsity of the major premise upon which the argument is based. We do not ground our decision in this appeal on that theory; we note it because it is plausible and because it would support our conclusion with respect to the legislative intent.

conclude that appellant has no right to seek direct appellate review of the partial denial of his motion to correct the sentence by deleting the condition he finds onerous.[3]

**APPEAL DISMISSED; APPELLANT TO PAY THE COSTS.**

---

**3.** At oral argument, appellant posited that, because he (1) failed to object to the allegedly unlawful condition when it was imposed and (2) failed as well to raise the issue in a direct appeal from the judgment, he will likely be deemed to have waived his right to complain about the condition in any future PCPA proceeding. The practical effect of such a waiver, he argued, is to make PCPA unavailable, thus reinforcing his claim that *Randall*, rather than *Valentine*, applies.

We reject that belated claim for two reasons. First, the effect of accepting it, as presented, would be to reward appellant for his failure to make a timely objection. Appellant complained that, had he challenged the condition when it was imposed, the court may have agreed with his position and and may have decided to incarcerate him rather than grant probation without the condition. Yet, in response to a question from this Court, he insisted that, if *we* were to find the condition unlawful, our only option would be to strike the condition, leaving the probation otherwise intact. We could not, he insisted, simply remand for resentencing and allow the trial court to impose any statutorily authorized sentence. In that circumstance, appellant would indeed receive a benefit—or certainly a potential benefit—for declining to present his objection to the trial court. The law does not, and should not, countenance that kind of "sandbagging" of the trial judge.

More important, acceptance of appellant's approach would effectively eviscerate § 645A(e) by allowing appellate review of the denial of *habeas corpus, coram nobis,* or other alternative forms of collateral attack whenever the petitioner has failed to satisfy some prerequisite for PCPA relief. We do not believe that was the Legislature's intent.