**Renee EMRY, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 00–CM–154, 01–CO–661.**

District of Columbia Court of Appeals.

Argued May 20, 2003.

Decided Aug. 14, 2003.

---

Christopher Warnock and Jeffrey Orchard, Washington, DC, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Alex J. Bourelly, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, SCHWELB, and REID, Associate Judges.

REID, Associate Judge.

On January 28, 2000, appellant, Ms. Renee Emry, was convicted of unlawful possession of marijuana in violation of D.C.Code § 33–541(d) (1998).[1]  On appeal she challenges the trial court's rejection of her medical necessity defense.  We affirm, and hold that on the facts of this case, Ms. Emry failed to establish a case of medical necessity.

## FACTUAL SUMMARY

On September 15, 1998, at around 9:18 in the morning, Ms. Emry, a Michigan resident, entered the United States Capitol office of Representative William McCollum, a member of Congress from the State of Florida, and began smoking marijuana. She appeared "wobbly" and held a banner which read: "I use marijuana for multiple

1. Recodified at D.C.Code § 48.904.01(d) (2001).

sclerosis." Officers with the United States Capitol Police responded to the scene and arrested her.

At trial the defense claimed that it was medically necessary for Ms. Emry to use the marijuana because of her multiple sclerosis, and presented Dr. Denis Petro, an expert in neurology and pharmacology, as its only witness.[2] He examined Ms. Emry after her arrest and confirmed upon reviewing her medical records[3] that she suffered from multiple sclerosis and experienced spasticity as a result—a symptom involving painful, uncontrollable muscle spasms. Several drugs are generally prescribed to treat the condition, including Baclofen, Dantrium, Valium, and marijuana. Ms. Emry has used marijuana and Baclofen to control the symptoms of her illness.

The trial court ruled that the evidence presented by Ms. Emry was insufficient to permit a necessity defense because it did not satisfy the factors set forth in *Griffin v. United States*, 447 A.2d 776 (D.C.1982). Specifically, it determined that Ms. Emry had legal alternatives besides using marijuana to treat her spasticity. It further found that she was not in imminent danger of experiencing spasticity at the time she smoked marijuana in the congressman's office, and that Ms. Emry's use of marijuana was not designed to avert an attack of spasticity.

## ANALYSIS

■ Ms. Emry contends that the trial court erred in failing to follow the principles set forth in *United States v. Randall*, 104 DAILY WASH. L. RPTR. 2249 (D.C.Super.Ct. December 28, 1976), which recognized the use of a medical necessity

defense to the illegal possession of marijuana. She claims that the Superior Court's decision in that case "has been explicitly accepted by this Court as precedent" and thus she should have been permitted to raise a medical necessity defense to her criminal charge.

However, we have not adopted *Randall'* s holding, nor do we decide on this record whether medical necessity can ever be a defense to the unlawful possession of marijuana. Even assuming such a defense exists in this jurisdiction, the facts presented here are insufficient to support its application.

■ In *Griffin, supra,* which involved a claim that the charged unlawful entry of a church was "necessary" to call attention to the plight of homeless persons, we explained that "the necessity defense exonerates persons who commit a crime under the 'pressure of circumstances,' if the harm that would have resulted from compliance with the law would have significantly exceeded the harm actually resulting from the defendants' breach of the law." *Id.* at 777 (citing *Randall, supra,* 104 DAILY WASH. L. RPTR. at 2249) (other citations omitted). But, we made clear that

[t]he defense is not available where: (1) there is a legal alternative available to the defendant[ ] that does not involve violation of the law; (2) the harm to be prevented is neither imminent, nor would be directly affected by the defendant['s] actions; and (3) the defendant['s] actions were not reasonably designed to actually prevent the threatened greater harm.

**2.** Also, prior to trial the defense moved to dismiss the indictment, alleging that it violated the Ninth Amendment to the Constitution and the Fifth Amendment's guarantees of equal protection and due process.

**3.** Those medical records consisted in part of reports by Dr. Selwa, Ms. Emry's personal neurologist.

*Id.* at 778 (internal citations omitted). In other words, " 'if there was a reasonable legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the [necessity] defens[e] will fail.' " *Id.* at 778 (quoting *United States v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)) (internal quotation marks and other citation omitted). Moreover, since necessity is an affirmative defense, the burden was on Ms. Emry to put forth sufficient evidence to satisfy the *Griffin* factors. *See also United States v. Unser,* 165 F.3d 755, 764 (10th Cir.1999) ("[T]he defendant ... must bear the initial burden of producing evidence which could support a finding in h[er] favor on each element of the defense"). But Ms. Emry did not meet her burden.

Here, Dr. Petro, the only witness who testified on behalf of the defense, acknowledged that Ms. Emry had legal alternatives to treat spasticity other than smoking marijuana. According to him, there are three drugs that are specifically marketed for the treatment of the condition, namely Baclofen, Dantrium, and Zanaflex, and at least thirty others that may be prescribed for the same purpose. Ms. Emry at one point used Baclofen "but was not able to tolerate it." However, the record does not indicate that she tried Dantrium or Zanaflex. Furthermore, Dr. Petro acknowledged that Valium, a muscle relaxant, can be obtained legally and is prescribed to treat spasticity. But the record does not indicate that Ms. Emry ever tried that drug or any of the dozens of other drugs used to alleviate her condition.

At one point, Dr. Petro noted that "[t]here is no drug [that is] without side [e]ffects." And he pointed out that while Baclofen is "[t]he most common drug right now in the United States" for treatment of spasticity, its side effects included mood swings, "dizziness or nausea or vomiting ...." Also, Dantrium is known to have

"very high [ ]toxicity" levels and Zanaflex has a "very poor efficacy" rate. However, Dr. Petro acknowledged that smoking marijuana can cause adverse effects on the heart. And, more importantly, although Dr. Petro testified that the use of marijuana eased Ms. Emry's spasticity attacks, he also acknowledged that her medical records indicated that Dr. Selwa had "concluded that there was no way to objectively document clear differences [in her condition when she was] on or off [of marijuana]." Furthermore, the record does not indicate that Ms. Emry was in "imminent" harm of experiencing an attack of spasticity at the moment she smoked marijuana in Congressman McCollum's office, nor that her use of marijuana at that particular time would have affected her condition. In addition, the record does not show that her actions were "reasonably designed to actually prevent" such an attack.

Dr. Petro testified that while a person who suffers from multiple sclerosis can have a spasticity attack in the morning, generally the attacks are more prevalent later in the day. Here, Ms. Emry arrived at the congressman's office shortly after nine o'clock in the morning and began smoking marijuana, although there were no signs that she was experiencing or would soon be experiencing any such attack. On the contrary, as the trial court noted, "using the marijuana right there in the congressman's office ... [was not] designed to alleviate an attack of spasticity." Rather, it explained, her actions were intended to focus attention on the medicinal uses of marijuana:

> [t]his [was] not a situation where, ... she was using the drug in her home, and somebody came into her home, this is not a situation where she had some sort of seizure, for instance, and needed to take some medication right then and there, that's not what this appears to be

from the record. This was obviously thought about ahead of time, the banner was prepared, it's clearly [a] very carefully written up banner, she came there with it, this was something that was planned in advance, it wasn't an attempt to prevent [some] sort of spontaneous eruption of a symptom of a disease.[4] Thus, even assuming this court recognized the existence of a medical necessity defense, the facts of this case do not support its application. *See United States v. Nelson–Rodriguez,* 319 F.3d 12, 42 (1st Cir. 2003) (rejecting defendant's claims that a necessity defense was applicable where he put forth insufficient evidence to support such a defense).

Moreover, recognizing such a defense may contravene congressional intent. Voters in the District of Columbia approved Initiative 59 on November 3, 1998, which would have permitted the "use [of] marijuana for medical purposes when a licensed physician has found [it] ... to be medically necessary ...." *Turner v. Dist. of Columbia Bd. of Elections and Ethics,* 77 F.Supp.2d 25, 27 (D.D.C.1999) (citation omitted). But Congress effectively blocked that measure from becoming law when it enacted the Barr Amendment as part of the District of Columbia Appropriations Act pursuant to its statutory authority to disapprove such measures. *See* D.C.Code § 1–206.02(c)(1)(2001); *see also State v. Tate,* 102 N.J. 64, 505 A.2d 941 (1986) (refusing to permit defendant charged with possession of marijuana to use medical necessity defense where legislature indicated that such a defense was not permitted); *State v. Williams,* 93 Wash.App. 340, 968 P.2d 26 (1998) (rejecting defendant's claims that necessity defense was applicable where legislature had indicated such a defense was not available); *State v. Hanson,* 468 N.W.2d 77 (Minn.Ct.App.1991) (same).

Ms. Emry further contends that her conviction was barred under the Tenth Amendment to the United States Constitution. However, she failed to challenge the validity of the indictment before trial as required under Super. Ct. R.Crim. P. 12(b)(1), waiting until eight months after her conviction, when she no longer was in custody, to file a D.C.Code § 23–110 "petition to dismiss" her conviction pursuant to the Tenth Amendment. Therefore, she has waived this claim. Next, she raises constitutional due process and equal protection arguments. In essence, she maintains that her rights were violated because another individual is given access to the government's "Compassionate Use" program while she is denied such access. Under the applicable rational basis test, *see City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and in the absence of any evidence in the record regarding the comparison of Ms. Emry's and Ms. Douglass's medical conditions, or concerning Ms. Emry's application to and rejection from the Compassionate Use program, we cannot say that the government has acted unreasonably. Finally, we are unpersuaded by Ms. Emry's Ninth Amendment contention. She appears to acknowledge in her brief that the Ninth Amendment protects fundamental rights that are rooted in the traditions of the people, or are implicit in the concept of ordered liberty. She

---

4. *See e.g., Gaetano v. United States,* 406 A.2d 1291, 1294 (D.C.1979) (rejecting application of necessity defense in case involving anti-abortion activists charged with trespassing at an abortion clinic where the defendants' evidence regarding the effects of an abortion did "not support an immediate call to action in violation of the law of the land") (citation omitted).

makes no showing, however, that the "liberty" to smoke marijuana for medical reasons is one of this country's deeply rooted traditions.

Accordingly, for the reasons stated above, we affirm the trial court's decision.

*So ordered.*