883 A.2d 251

**Paul Miles JEFFERSON, Jr.**

v.

**STATE of Maryland.**

**No. 889, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Sept. 16, 2005.

Brian L. Zavin (Nancy Forster, Public Defender, on brief), for appellant.

Shannon E. Avery (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, KENNEY and EYLER, DEBORAH S., JJ.

KENNEY, J.

Paul Miles Jefferson, Jr., appellant, was charged in the Circuit Court for Caroline County with possession of marijuana and possession of drug paraphernalia. After a bench trial and pursuant to a not guilty plea based upon an agreed statement of facts, appellant was convicted of both counts and sentenced to thirty days' incarceration for possession of marijuana, to which the conviction for possession of paraphernalia merged. Appellant presents one question on appeal:

Did the circuit court err in denying his motion to dismiss?

For the reasons that follow, we affirm the judgment of the circuit court.[1]

## FACTUAL AND PROCEDURAL HISTORY

On February 8, 2004, while appellant was in the "work release pod" of the Caroline County Detention Center, jail officials observed "suspicious behavior" that led them to search appellant. The officers found a plastic bag containing 2.8 grams of marijuana on appellant's person.

Prior to trial, appellant filed a motion to dismiss the charge of possession of marijuana, asserting that marijuana is listed as a Schedule I Controlled Dangerous Substance, which, in turn, is defined, in part, as a substance that has "no accepted medical use." Maryland Code (2002) § 5–402(g)(2) of the

---

1. The State asserts, as a preliminary matter, that the conviction for possession of paraphernalia is not properly before us. Given our affirmation of appellant's conviction of possession of marijuana, we need not consider the merits of the foregoing assertion.

Criminal Law Article ("CL"). He argued that, by enacting the "Medical Marijuana" law, "the legislature declared that marijuana has ... valid medical functions and characteristics which can be recognized in the reduced penalty phase." He also contended that because the General Assembly did not reschedule marijuana, it "lack[s] any proper legislative scheduling." The circuit court stated: "[I am] just gonna go ahead and deny your motion, dismiss outright. Because I mean I have looked at this before, if it [engenders an] appealable issue, that's fine."

## DISCUSSION

On appeal, appellant repeats the position he took in the motion to dismiss. He asserts that, "[w]hile reasonable minds may differ" as to whether marijuana "ever truly met" the requirements of Schedule I classification, "that was certainly the position of the General Assembly prior to October 1, 2003, the effective date of the Darrell Putman Compassionate Use Act" ("the Compassionate Use Act"). He argues that the Compassionate Use Act "demonstrates recognition by the General Assembly that marijuana has at least some accepted medical use," and that "the failure to reschedule marijuana renders its current classification arbitrary and unreasonable."

The State counters that "the plain language of the statute makes it clear that the legislature did not intend to invalidate the crime of possession of marijuana," but, rather, "clearly contemplated the continued illegality of possession of marijuana." Additionally, the State asserts that the legislative history does not demonstrate that the General Assembly "intended to effectively reclassify marijuana as something other than a Schedule I substance," and that the classification of marijuana as a Schedule I substance is not arbitrary or unreasonable.

The State points out that marijuana's status as a Schedule I drug "is evidence that the legislature believes that the substance meets the requirements of [CL] § 5–402(g)(1–3)." *See Poore v. State*, 39 Md.App. 44, 73, 384 A.2d 103 (1978) (heroin, as a Schedule I drug, is "deemed to have no legitimate or accepted medical use in the United States"); *Gonzales v.*

*Raich,* —— U.S. ——, 125 S.Ct. 2195, 2204, 162 L.Ed.2d 1 (2005) ("Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment.").

CL § 5–402(a) provides:

(a) Schedule I consists of each controlled dangerous substance:

(1) listed in this section;

(2) added to Schedule I by the Department [of Health and Mental Hygiene] under § 5–202(b) of this title; or

(3) designated as a Schedule I controlled dangerous substance by the federal government unless the Department objects under § 5–202(f) of this title.

Marijuana is listed as a Schedule I drug in CL § 5–402(d)(1)(vii). CL § 5–402(g)(1)–(3) states the criteria to add a substance to Schedule I:

(g) The Department may not add a substance to Schedule I under § 5–202 of this title unless the Department finds:

(1) a high potential for abuse of the substance;

(2) no accepted medical use in the United States for the substance; and

(3) a lack of accepted safety for use of the substance under medical supervision.

In 2003, the General Assembly enacted the Compassionate Use Act, which amended the penalty provisions for the use or possession of marijuana:

(3)(i) In a prosecution for the use or possession of marijuana, the defendant may introduce and the court shall consider as a mitigating factor any evidence of medical necessity.

(ii) Notwithstanding paragraph (2) of this subsection, if the court finds that the person used or possessed marijuana because of medical necessity, on conviction of a violation of this section, the maximum penalty that the court may impose on the person is a fine not exceeding $100.

Maryland Code (2002, 2004 Supp.), § 5–601(c)(3) of the Criminal Law Article ("CL Supp").

 "The cardinal rule of statutory construction is to ascertain and effectuate legislative intent." *State v. Glass*, 386 Md. 401, 409, 872 A.2d 729 (2005) (citations omitted). "All other canons, including the one directing that the words used in the statute be read literally, are subject to that governing imperative." *Barr v. State*, 101 Md.App. 681, 687, 647 A.2d 1293 (1994) (citations omitted). "[W]e read the words 'in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence.'" *Williams v. State*, 329 Md. 1, 15, 616 A.2d 1275 (1992). In effectuating that rule, courts must read all parts of a statute together, with a view toward harmonizing the various parts and avoiding both inconsistencies and senseless results that could not reasonably have been intended by the General Assembly. *Barr*, 101 Md.App. at 687, 647 A.2d 1293. " '[I]t is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law.'" *Pete v. State*, 384 Md. 47, 65, 862 A.2d 419 (2004) (citation omitted).

 The plain language of CL § 5–402(d)(1)(vii) classifies marijuana as a Schedule I substance. When the General Assembly enacted the Compassionate Use Act and amended the penalty provisions for possession of marijuana, it did not reclassify the substance. Moreover, pursuant to CL § 5–402(a)(3), a substance listed as a Schedule I controlled substance by the federal government is, by reference, classified as a Schedule I substance under Maryland law. Marijuana is listed as a Schedule I drug by the federal government under 21 U.S.C. § 812(c)(10) (2002).

 The enactment of the Compassionate Use Act does not persuade us that the General Assembly now believes that the Schedule I classification of marijuana is inappropriate. Contrary to appellant's assertion, the General Assembly did not put "its imprimatur on the medical use of marijuana." Rather, CL Supp. § 5–601(c)(3)(i) does nothing more than provide that "the defendant may introduce and the court shall consider" evidence of medical necessity as a mitigating factor, and

the language of CL Supp. § 5–601(c)(3)(ii) clearly contemplates a conviction of use or possession of marijuana. Possession or use of marijuana, *even in the event of a "medical necessity,"* remains illegal.[2]

We see no irreconcilable conflict between the General Assembly's permitting a sentencing court to consider "medical necessity" evidence in mitigation of a sentence to a particular

---

2. It is not necessary to determine the meaning of "medical necessity" to resolve this case. Other courts, however, have considered "medical necessity" when it has been raised *as a defense* in possession of marijuana cases, and have analogized it to the common law defense of necessity, which requires that harm be imminent and that there is no legal alternatives to its use. *See, e.g. Emry v. United States,* 829 A.2d 970, 973 (D.C.App.2003) (Even if a medical necessity defense to possession of marijuana existed, it would not apply to a defendant who had not exhausted legal alternatives and for whom injury was not imminent.), *cert. denied,* 540 U.S. 1094, 124 S.Ct. 970, 157 L.Ed.2d 803 (2003); *Jenks v. State,* 582 So.2d 676, 678–79 (Fla.Ct.App.1991) ("medical-necessity" defense was "a more particular application" of the common law necessity defense), *review denied,* 589 So.2d 292 (Fla.1991); *State v. Hastings,* 118 Idaho 854, 801 P.2d 563, 564 (1990) (Defendant should have been allowed to present a common law necessity defense to felony possession of marijuana.).

 Some courts have concluded that the language of the Controlled Substances Act, characterizing Schedule I substances as having no accepted medical use, is contrary to a defense of medical necessity. In *United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001), the United States Supreme Court refused to read a common law medical necessity exception for marijuana into the federal Controlled Substances Act. The Court noted that for Schedule I substances such as marijuana, "there is but one express·exception, and it is available only for Government-approved research projects." *Id.* at 490, 121 S.Ct. 1711. The Court also noted that it had never held that necessity was "a viable justification for violating a federal statute" and opined that such a defense would "entail a social balancing that is better left to Congress." *Id.* at 491 n. 4, 121 S.Ct. 1711.

 In *State v. Tate,* 102 N.J. 64, 505 A.2d 941, 944–45 (1986), the New Jersey Supreme Court held that the necessity defense was not available to a defendant charged with possession of marijuana because its classification as a Schedule I substance indicated that the legislature had determined that marijuana has "high potential for abuse" and "no accepted medial use in treatment * * * or lacks accepted safety for use in treatment under medical supervision." The Court concluded that the legislature had considered a medical necessity defense and determined that medically necessary use should be permitted only under the Controlled Dangerous Substances Therapeutic Research Act.

individual and continuing to classify marijuana as a Schedule I substance. Although it is an administrative law case, *Alliance for Cannabis Therapeutics v. Drug Enforcement Administration,* 930 F.2d 936 (C.A.D.C.1991), helps to illustrate the distinction between an "accepted medical use" for scheduling of controlled substances purposes and recognition by some physicians of a medical use for a particular substance. There, petitioners, the Alliance for Cannabis Therapeutics and the National Organization for the Reform of Marijuana Laws, sought reclassification of marijuana from Schedule I to Schedule II of the Controlled Substance Act. The petitioners argued before an Administrative Law Judge ("ALJ") that marijuana had medical uses for treatment of cancer, glaucoma, and other diseases, and should be classified as a Schedule II substance.

---

In *State v. Hanson,* 468 N.W.2d 77, 78–79 (Minn.App.1991), the Minnesota Court of Appeals held that the necessity defense was not available to a charge of possession of marijuana because the existence of the THC Therapeutic Research Act ("the Act") indicated that the legislature had considered the possible medical uses of marijuana were only those recognized in the Act.

In *State v. Poling,* 207 W.Va. 299, 531 S.E.2d 678, 685 (2000) (citing W. Va.Code § 60A-2-203(1997)), the Supreme Court of Appeals of West Virginia concluded that the defense of medical necessity was unavailable for Schedule I Controlled Substances because the legislature had determined that they had "no accepted medical use in treatment in the United States or lack[ ] accepted safety for use in treatment under medical supervision." It held that medical necessity was unavailable as an affirmative defense to a marijuana charge "because the Legislature has designated marijuana as a Schedule I controlled substance with no exception for medical use." *Id.*

In Maryland, the defense of necessity arises "[i]f a choice exists but only between two evils, one of which is the commission of a prohibited act, and the emergency was not created by the wrongful act of any other person." *Sigma Reproductive Health Center v. State,* 297 Md. 660, 677, 467 A.2d 483 (1983) (citing R. Perkins, *Criminal Law* 956–61 (2d ed.1969)). In *Frasher v. State,* 8 Md.App. 439, 448, 260 A.2d 656 (1970), this Court determined that the defense of necessity is not applicable to charges of control of heroin and possession of narcotic paraphernalia. We explained: "[I]t has been held that in a prosecution for an offense not requiring intent, as are the offenses here, the defense of necessity is not available, at least where the defendant could have avoided the emergency by taking advance precautions." *Id.* (citing 21 Am.Jur.2d, § 99, p. 179 (citing *Commonwealth v. New York C. & H.R.R. Co.,* 202 Mass. 394, 88 N.E. 764 (1909))).

The ALJ found that a " 'respectable minority' of American physicians accept those uses," and ruled that marijuana had a "currently accepted medical use." *Id.* at 938. The Administrator of the Drug Enforcement Administration ("the Administrator") rejected the ALJ's recommendation, determining that the phrase "currently accepted medical use" required more than a showing that a "respectable minority" of physicians accepted the usefulness of the drug. *Id.* Instead, in declining to reclassify marijuana, the Administrator relied on the lack of " 'verifiable scientific data and acceptance by the medical community,' " his conclusions that " 'the chemistry, toxicology, and pharmacology of marijuana has not been established,' " and that "its effectiveness [has not been] documented in humans with scientifically-designed clinical trials." *Id.*

Petitioners argued on appeal that the Administrator unreasonably rejected the evidence that "a number of physicians believe marijuana is medically useful and, instead, improperly predicated his determination on the absence of demonstrated scientific evidence that the drug is medically useful and safe." *Id.* at 939. The Court concluded that the Administrator's determination was not unreasonable:

> The difficulty we find in petitioners' argument is that neither the statute nor its legislative history precisely defines the term "currently accepted medical use"; therefore, we are obliged to defer to the Administrator's interpretation of that phrase if reasonable.

*Id.* at 939.[3]

Other courts have concluded that the lack of accepted medical use of marijuana does not mean that it has no possible medical use. In *Jenks v. State,* 582 So.2d 676, 679 (Fla.Ct. App.1991) (citing Fla. St. § 893.03 (1989)), the Florida intermediate appellate court determined that, while a portion of the Florida statute recited that a substance in Schedule I, in

---

**3.** House Bill 702, as initially introduced, created a Medical Marijuana Research Program which included a provision for the Board of Physician Quality Assurance to develop evaluation forms to "OBTAIN[ ] INFORMATION ON THE BASIC SAFETY, EFFICACY, FREQUENCY, AND NATURE OF THE MEDICAL USE OF MARIJUANA BY PARTICI-

which marijuana was included, "has a high potential for abuse and has no currently accepted medical use in treatment in the United States," the legislature also recognized that "certain substances are currently accepted for certain limited medical uses in treatment in the United States but have a high potential for abuse."

In *Isbell v. State*, 428 So.2d 215, 216 (Ala.Crim.App.1983) (citing Ala.Code § 20–2–23(3)(j) (1975)), the Court of Criminal Appeals of Alabama concluded that the enactment of the Therapeutic Research Act ("TRA") did not conflict with the finding that marijuana had a " 'high potential for abuse' " and had " 'no accepted medical use in treatment in the United States.' " The Court reasoned that the legislature noted the possibility that marijuana could alleviate side effects of chemotherapy and the effects of glaucoma, but concluded that more research was needed. "While marijuana *may* be useful in the treatment of some medical conditions it has not achieved *accepted* medical use or safety in its prescription and application." *Id.* at 217.

In *State v. Palmer*, 96 Wash.2d 573, 637 P.2d 239 (1981), the Supreme Court of Washington rejected Palmer's contention that the State Board of Pharmacy had abused its discretion in not reclassifying marijuana as a Schedule II drug. The Court noted that while the executive secretary of the Board had recognized that "some doctors have recommended [use of marijuana] to their patients," he had defined an "acceptable medical use" as meaning that the "substance is accepted among practicing physicians generally and also accepted by the United States Food and Drug Administration." *Id.* at 240.

## CONCLUSION

The enactment of the Compassionate Use Act by the General Assembly does not reflect a change in its views on the

PATING PATIENTS." H. 702, 2003 Leg., 417 Sess. (Md.2003). The original bill also recited a finding that "STATE LAW SHOULD MAKE A DISTINCTION BETWEEN THE MEDICAL AND NONMEDICAL USE OF MARIJUANA." H. 702, 2003 Leg., 417 Sess. (Md.2003). Neither provision was included in the legislation when passed.

classification of marijuana. In the context of the overall statutory scheme, to maintain its classification as a Schedule I substance is neither irrational nor arbitrary. The Act does not create a statutory defense, and its focus on punishment suggests that no common law defense is available. The Act merely permits the introduction of, and requires the court to consider in mitigation of sentence upon conviction, evidence of "medical necessity" for using or possessing marijuana. Although in the case of a medical necessity the penalty may be less severe, use and possession of marijuana clearly remains a crime. Any further "social balancing" is for the General Assembly, and not the courts.[4]

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

4. In *Gonzales v. Raich,* —— U.S. ——, 125 S.Ct. 2195, 2215, 162 L.Ed.2d 1 (2005), the United States Supreme Court held that the Drug Enforcement Administration has authority under the Commerce Clause to seize and destroy marijuana plants grown in compliance with California's Compassionate Use Act. It said that the Controlled Substances Act "authorizes procedures for the reclassification of Schedule I drugs. But perhaps even more important than these legal avenues is the democratic process, in which the voices of voters . . . may one day be heard in the halls of Congress."