911 A.2d 1245

Kevin Tremaine STODDARD

v.

STATE of Maryland.

No. 24, Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 5, 2006.

Michael E. Henderson (Willis & Henderson, P.A., Ellicott City, on brief), for appellant.

Sara Page Pritzlaff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

In this case, we must construe Md.Code (2001), § 10–107 of the Criminal Procedure Article, to determine whether a multiple count indictment, charging various counts of burglary and related offenses, which were allegedly committed at different times, in several locations, and against different people, constitutes a single unit within the meaning of the expungement statute. *See* Md.Code (2001), § 10–101 et seq. Specifically,

we must decide whether a defendant's guilty plea to burglary (count 13) of the multiple count indictment precludes expungement of the remaining charges, which were nol prossed by the State as part of a plea agreement. We hold that, consistent with the plain language of § 10–107, burglary and theft charges that stem from separate and distinct events, although the charges are contained within the same charging document, do not comprise a single unit for purposes of expungement. Charges arising, however, from the same incident, transaction, or set of facts as the count to which a criminal defendant pleads guilty comprise a single unit, and therefore may not be expunged. Thus, a guilty plea to one count of first degree burglary, contained within a multiple count charging document, does not preclude expungement of the other burglary and theft counts which were nol prossed, unless the other charges arise from the same incident, transaction, or set of facts to which the defendant pled guilty.

## FACTUAL BACKGROUND

On November 12, 2005, at 2:15 a.m., a police officer working as security for the University Village Apartment Complex in Towson, Maryland, observed a man, later identified as Kevin Tremaine Stoddard ("Petitioner"), walking around inside apartment 2101, and then leaving the apartment by removing a window screen. The officer detained Petitioner, a Towson University student, and arrested him after learning that he did not have permission to be inside that apartment. After receiving *Miranda* warnings, Petitioner admitted to entering apartment 2101 and confessed to a series of other burglaries as well.

Petitioner was charged with seven counts of first-degree burglary, two counts of fourth-degree burglary, seven counts of theft under $500, and one count of possession of drug paraphernalia. The State chose to consolidate all charges in a single, multiple-count indictment. All charges stemmed from Petitioner's involvement in a series of burglaries and related criminal offenses involving several individual apartments, located within the University Village Apartment Complex. The

crimes occurred over a period of more than two months. A summary of the counts are as follows:

Counts 1 and 2: First degree burglary and theft under $500 involving 402 Campus View Dr., Apartment 2104 on October 9, 2004

Counts 3 and 4: First degree burglary and theft under $500 involving 402 Campus View Dr., Apartment 2310 on October 18 and 22, 2004

Counts 5 and 6: First degree burglary and theft under $500 involving 402 Campus View Dr., Apartment 2106 on October 18 and 22, 2004

Counts 7 and 8: First degree burglary and theft under $500 involving 412 Campus View Dr., Apartment 6102 on October 25, 2004

Counts 9 and 10: First degree burglary and theft under $500 involving 402 Campus View Dr., Apartment 2211 on October 25, 2004

Counts 11 and 12: First degree burglary and theft under $500 involving 402 Campus View Dr., Apartment 3308 on October 25, 2004

Counts 13–15:First degree burglary, theft under $500, and possession of paraphernalia involving 402 Campus View Dr., Apartment 2101 on November 12, 2004

Count 16: Fourth degree burglary involving 402 Campus View Dr., Apartment 2204 on November 4, 2004

Count 17: Fourth degree burglary involving 402 Campus View Dr., Apartment 2204 on September 4, 2004

On April 4, 2005, pursuant to a plea agreement, Petitioner pled guilty to count 13, charging first-degree burglary, in exchange for the State entering a nolle prosequi as to the remaining 16 counts. Counts 13–15 arose from the same incident, transaction, and set of facts. Those crimes allegedly occurred on November 12, 2004, and involved the burglary and theft of personal property from apartment 2101. The theft of personal property gave rise to the charge of possession of paraphernalia. The burglaries listed in the remaining counts,

which were nol prossed, all took place on different days and in different apartment units than did the burglary in count 13.

On June 8, 2005, Petitioner was sentenced to four-years imprisonment with all but 90 days suspended and the last 30 days to be served on home detention. He also was placed on two-years probation, effective upon release, and was ordered to pay restitution to each of the burglary victims. In addition, Petitioner was ordered to abstain from alcohol, illegal drugs and abuse of prescription drugs, submit to random urinalysis, and to seek alcohol and drug treatment. The court also ordered that Petitioner have no contact with the victims, their property, or the University Village Apartments.

On September 1, 2005, Petitioner filed a Motion for Modification of Sentence, in which he requested that the trial court strike its judgment of guilty and enter probation before judgment. Subsequently, on October 24, 2005, Petitioner filed a Petition for Expungement, requesting that the court expunge counts 1–12 and 14–17. In his Petition for Expungement, Petitioner certified that he had not been convicted of any crime, other than a minor traffic violation, since the State nol prossed counts 1–12 and 14–17. On October 25, 2005, the State filed an Answer to the Motion for Modification of Sentence, requesting that Petitioner's motion be denied.[1] On November 9, 2005, the State filed an Answer to the Petition for Expungement.

The Circuit Court held a hearing on January 19, 2006. At that hearing, Petitioner conceded that counts 13–15 all arose from the same incident and that, because he pled guilty to count 13, counts 14 and 15 could not be expunged. The State argued that because all 17 of the counts constituted a single unit, Petitioner's guilty plea to count 13 prevented all of the counts from being expunged. The Circuit Court denied the Petition for Expungement. Petitioner filed a timely notice of appeal to the Court of Special Appeals.[2] On June 7, 2006,

---

1. The Circuit Court failed to rule on Petitioner's motion, in effect, denying it.

2. Petitioner presented the following question in his brief on appeal:

while the case was pending in the intermediate appellate court, this Court issued a writ of certiorari on its own motion. *Stoddard v. State,* 393 Md. 242, 900 A.2d 749 (2006).

## DISCUSSION

The parties dispute whether, under § 10–107 of the Criminal Procedure Article, all of Petitioner's charges, when consolidated within a single charging document, constitute a unit, such that Petitioner's guilty plea to count 13 precludes the expungement of any of the remaining counts. Notably, because Petitioner pled guilty to count 13, that count cannot be expunged, and that issue is therefore not before this Court. *See* § 10–105(a) (limiting expungement for charges that resulted in a finding of guilt to a person who has been granted a full and unconditional pardon by the Governor and who was convicted of only one criminal act that was not a crime of violence). The expungement of counts 14 and 15 is also not at issue in this case because Petitioner conceded that because those counts arise out of the same incident as count 13 they all constitute a unit, preventing their expungement. Aside from this concession, Petitioner contends that the remaining counts do not constitute a single unit because the other burglaries are separate and distinct units. The State contends, however, that because all of the burglaries occurred in a limited time frame, in only two apartment buildings, all for the purpose of supporting Petitioner's drug habit, they constitute a unit within the meaning of § 10–107. This issue is therefore a matter of statutory interpretation.

---

Did the Court err by denying the petition for expungement on the ground that all counts of the indictment were one criminal unit, although the crimes alleged took place at different times and in different places, and involved different victims?

The State presented the following question in its brief:

Where Stoddard was charged in a single indictment with 17 crimes arising out of a burglary spree and possession of drug paraphernalia upon arrest, and pursuant to a plea agreement he plead guilty to one count of first degree burglary in return for the entry of a nolle prosequi on the remaining counts, did the trial court properly apply Section 10–107 of the Criminal Procedure Article to deny Stoddard's petition for expungement of the nol prossed counts in the indictment?

### A.

### Statutory Interpretation

We recently summarized the rules of statutory interpretation in *Walzer v. Osborne*, 395 Md. 563, 571–73, 911 A.2d 427, 431–33 (2006):

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Chow v. State*, 393 Md. 431, 443, 903 A.2d 388, 395 (2006) (citations omitted); *see also Johnson v. Mayor of Balt. City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *Moore v. State*, 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005); *O'Connor v. Balt. County*, 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004); *Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000).

As this Court has explained, "[t]o determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning." *State Dept. of Assessments and Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n*, 348 Md. 2, 13, 702 A.2d 690, 696 (1997); *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448, 452 (1994); *see also Chow*, 393 Md. at 443, 903 A.2d at 395 (stating that "[s]tatutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology") (citations omitted). We do so "on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant." *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002). "When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent." *Marriott Employees Fed. Credit Union v. MVA.*, 346 Md. 437, 445, 697 A.2d 455, 458 (1997). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written."

*Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). In addition, "[w]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. NationsBank, N.A.,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *see Chow,* 393 Md. at 443, 903 A.2d at 395. "If there is no ambiguity in th[e] language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends...." *Chow,* 393 Md. at 443–44, 903 A.2d at 395.

If the language of the statute is ambiguous, however, then "courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration]." *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996) (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730, 732 (1986)). We have said that there is "an ambiguity within [a] statute" when there exist "two or more reasonable alternative interpretations of the statute." *Chow,* 393 Md. at 444, 903 A.2d at 395 (citations omitted). When a statute can be interpreted in more than one way, "the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal." *Id.*

> If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

*Witte,* 369 Md. at 525–26, 801 A.2d at 165. In construing a statute, "[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake v. State,* 395 Md. 213, 909 A.2d 1020 (slip op. at 12) (2006) (citing *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005)); *see Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994).

In addition, "the meaning of the plainest language is controlled by the context in which it appears." *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996) (citations omitted). As this Court has stated,

> [b]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Gordon Family P'ship v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997) (citations omitted).

We now turn our attention to the statute at issue in this case.

## B.

### The Criminal Record Expungement Statute

The General Assembly enacted the Criminal Record Expungement Statute, § 10–101 et seq. of the Criminal Procedure Article, in 1975 "[for] the purpose of providing for the expungement of certain police and court records, providing procedures for such expungement, prohibiting certain practices concerning criminal charges not resulting in conviction, and relating generally to criminal records." 1975 Md. Laws, Chap. 260; *See also In the Matter of the Expungement of Records of Diane M.,* 317 Md. 652, 653, 566 A.2d 108 (1989). In the context of the statute, " '[e]xpungement' with respect to a court record or police record" means "removal from public inspection." § 10–101(e). This removal can be achieved in one of three ways:

(1) by obliteration;

(2) by removal to a separate secure area to which persons who do not have a legitimate reason for access are denied access; or

(3) if access to a court record or police record can be obtained only by reference to another court record or police record, by the expungement of it or the part of it that provides access.

*Id.* One of the General Assembly's purposes in providing for an expungement procedure was to help protect individuals seeking employment or admission to an educational institution, by entitling them to expungement of unproven charges, so that those individuals could avoid being unfairly judged during their application processes. § 10–109.[3] To further this purpose, the General Assembly expressly prohibited potential employers and academic institutions from requiring applicants to disclose information about expunged criminal charges, sub-

---

**3.** Section 10–109, entitled "Prohibited Acts," states as follows:

(a) *Applications for employment or admission.*—(1) Disclosure of expunged information about criminal charges in an application, interview, or other means may not be required:

(i) by an employer or educational institution of a person who applies for employment or admission; or

(ii) by a unit, official, or employee of the State or a political subdivision of the State of a person who applies for a license, permit, registration, or governmental service.

(2) A person need not refer to or give information concerning an expunged charge when answering a question concerning:

(i) a criminal charge that did not result in a conviction; or

(ii) a conviction that the Governor pardoned.

(3) Refusal by a person to disclose information about criminal charges that have been expunged may not be the sole reason for:

(i) an employer to discharge or refuse to hire the person; or

(ii) a unit, official, or employee of the State or a political subdivision of the State to deny the person's application.

(b) *Penalties.*—(1) A person who violates this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both for each violation.

(2) In addition to the penalties provided in paragraph (1) of this subsection, an official or employee of the State or a political subdivision of the State who is convicted under this section may be removed or dismissed from public service.

ject to a heavy penalty for violation. *Id.*[4]

Section 10–105 provides the authority for expungement of criminal records, and outlines the situations in which a criminal defendant may petition for such expungement. Section 10–105, entitled "Expungement of record after charge is filed," states, in relevant part:

(a) Petition for expungement.—A person who has been charged with the commission of a crime, including a violation of the Transportation Article for which a term of imprisonment may be imposed, may file a petition listing relevant facts for expungement of a police record, court record, or other record maintained by the State or a political subdivision of the State if:

(1) the person is acquitted;

(2) the charge is otherwise dismissed;

(3) a probation before judgment is entered, unless the person is charged with a violation of § 21–902 of the Transportation Article or Title 2, Subtitle 5 or § 3–211 of the Criminal Law Article;

(4) *a nolle prosequi or nolle prosequi with the requirement of drug or alcohol treatment is entered;*

(5) the court indefinitely postpones trial of a criminal charge by marking the criminal charge "stet" or stet with the requirement of drug or alcohol abuse treatment on the docket;

(6) the case is compromised under § 3–207 of the Criminal Law Article;

(7) the charge was transferred to the juvenile court under § 4–202 of this article; or

(8) the person;

---

4. In addition, no one may open or review an expunged record or disclose to another person any information from that record without a court order from either the court that ordered the record expunged or, in the case of a police record when no charge is filed, the District Court that has venue. § 10–108.

(i) is convicted of only one criminal act, and that act is not a crime of violence; and

(ii) is granted a full and unconditional pardon by the Governor.

\* \* \*

(Emphasis added.)

Most relevant to our analysis in this case is § 10–107, entitled "Charges arising from same incident, transaction, or set of facts," which provides:

(a) Multiple charges as unit.—

(1) In this subtitle, *if two or more charges,* other than one for a minor traffic violation, *arise from the same incident, transaction, or set of facts, they are considered to be a unit.*

(2) A charge for a minor traffic violation that arises from the same incident, transaction, or set of facts as a charge in the unit is not a part of the unit.

(b) Effect on right to expungement.—

(1) *If a person is not entitled to expungement of one charge in a unit, the person is not entitled to expungement of any other charge in the unit.*

(2) The disposition of a charge for a minor traffic violation that arises from the same incident, transaction, or set of facts as a charge in the unit does not affect any right to expungement of a charge in the unit.

(Emphasis added.)   To resolve the issue now before us, we must discern the General Assembly's meaning of the word "unit," as used in § 10–107(a)(1), at the time that it enacted this statute.   Specifically, we must determine whether several burglaries, committed on various days, in several apartments, against different victims, constitute a single unit within the contemplation of § 10–107, such that a guilty plea to one charge would preclude the expungement of the other charges under § 10–107(b)(1).

The State's main argument rests on the premise that if Petitioner's burglary charges arise from the same incident, transaction, or set of facts, or were part of a continuing

scheme, his guilty plea to count 13 precludes expungement of the rest of the charges because the charges then constitute one unit. The State first contends that the General Assembly's "expungement scheme" was not designed to expunge charges that were consolidated with, or related to, the charge on which a guilty finding was made. According to the State, the term "unit" must be read broadly so that when a person is found guilty of one charge, he or she is not entitled to have expunged other charges that are consolidated with the charge on which he or she was found guilty. The State avers that the plain language of § 10–107 "compels the conclusion that if a petitioner is found guilty of one charge, and then seeks expungement of the other consolidated charges which have been dismissed, he is not entitled to expungement." The State finds additional support for this argument in the language of Maryland Rule 4–203(a), which provides, in relevant part:

> Two or more offenses, whether felonies or misdemeanors or any combination thereof, may be charged in separate counts of the same charging document if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The State also cites to *Cooksey v. State*, 359 Md. 1, 752 A.2d 606 (2000), for the proposition that this Court recognized that a transaction is not limited to a single act, but may be in the nature of a continuing transaction involving more than one act. The State argues that we should therefore read the language of § 10–107 to preclude expungement when charges are part of a continuing scheme, in addition to when they constitute a single unit.

Petitioner contends that the face of the charging document demonstrates clearly that the crimes charged do not all stem from the same incident, transaction, or set of facts, but rather that each burglary constituted a separate unit within the contemplation of § 10–107. Petitioner argues that grouping charges in one indictment, in and of itself, does not mean that

the crimes charged amount to one unit. Further, Petitioner asserts that "continuing scheme" does not have the same meaning as "same incident, transaction, or set of facts," and that § 10–107 does not preclude expungement of counts, to which a nolle prosequi has been entered, that are part of a continuing scheme. Petitioner concedes, for purposes of analysis of the issue, that the burglaries could possibly be considered a part of a continuing scheme. Petitioner asserts, however, that the Legislature did not use the phrase "continuing scheme" in enacting § 10–107, and that Maryland Rule 4–203 used disjunctively the phrases "same act or transaction" and "transactions connected together or constituting parts of a common scheme or plan," demonstrating that the two phrases have different meanings. According to Petitioner, Rule 4–203(a)'s use of the disjunctive also demonstrates that the State's decision to list all of the charges in the same indictment does not mean that all of the charges are part of one unit.

To address these contentions, we begin our analysis with the language of § 10–107 to discern the Legislature's meaning of the word "unit." *See Walzer*, 395 Md. at 571–572, 911 A.2d. at 431–432 (citing *State Dept. of Assessments and Taxation*, 348 Md. at 13, 702 A.2d at 696; *Montgomery County*, 333 Md. at 523, 636 A.2d at 452). Section 10–107 states expressly that "if two or more charges . . . arise from the same incident, transaction, or set of facts, they are considered to be a unit." In examining the facts of this case, we reject the proposition that Petitioner's alleged burglaries, committed over a period of more than two months, and involving different apartments, constituted a single unit. In our view, each alleged burglary constituted a separate incident, transaction, and involved a different set of facts. In this respect, it is the Legislature's use of the words "incident," "transaction," and the phrase "set of facts," that are dispositive in our analysis.

When interpreting a statute, the "ordinary, popular understanding of the English language dictates interpretation of its terminology." *Walzer*, 395 Md. at 572, 911 A.2d. at

432 (citations omitted). Black's Law Dictionary defines "incident" as "[a] discrete occurrence or happening," BLACK'S LAW DICTIONARY 777 (8th ed.1999), and "discrete" as "[i]ndividual; separate; distinct." BLACK'S LAW DICTIONARY 499 (8th ed.1999). By reading these two definitions together, it becomes clear that the General Assembly included the word "discrete" in its definition of "incident" because it intended an "incident" to be something that occurred at a specific point in time and not something that transpired over a period of time or lasted indefinitely. Each of Petitioner's alleged burglaries occurred at a specific point in time; each occurred on a single date. Moreover, those nine burglaries, as a whole, did not occur at a specific point in time; they occurred over a period of time lasting for more than two months. We therefore hold that the nine burglaries charged do not represent a single incident, within the clear meaning of § 10–107.

The meaning of the word "transaction" is also unambiguous. Black's Law Dictionary defines "transaction" as either "[t]he act or an instance of conducting business or other dealings ...," or "[s]omething performed or carried out...." BLACK'S LAW DICTIONARY 1535 (8th ed.1999). Within the contemplation of this definition, we conclude that each of the alleged burglaries also represents a separate transaction. For each burglary, Petitioner performed a separate action and carried out a separate plan. There exists nothing in the record to suggest that Petitioner's plan was to burglarize the eight apartments over the course of two months on those specific dates, such that each burglary would represent a step within a single ongoing transaction. Instead, the burglaries each had a specific start time and end time and therefore represent individual transactions. We find guidance for this conclusion in our prior case law as well.

In *Cooksey*, 359 Md. at 11, 752 A.2d at 611, we discussed that "criminal acts may combine to create one separately punishable offense ... when the acts are committed as part of a single incident or transaction." There, we stated that what was dispositive for the " 'single transaction' theory" was whether the offenses contained in the same charge were

committed *"at the same time,"* *Id.* (discussing *State v. Warren*, 77 Md. 121, 26 A. 500 (1893)), and therefore it did not matter that the theft involved the taking of several articles of property or that the crimes were committed against many different victims. In the present case, however, Petitioner acted alone and therefore could not have committed a burglary in more than one apartment at the same time. Because Petitioner is charged with committing each burglary at a different time, the burglaries do not constitute a single incident or transaction.

Lastly, each burglary contained a different set of alleged facts. For example, in counts 1 and 2, Petitioner burglarized apartment 2104 on October 9, 2004, and stole a baggie of marijuana from Claire Hammond at that location. In counts 3 and 4, however, Petitioner burglarized apartment 2310 and stole money from Stephanie Yanke at that residence on October 18 and 22, 2004. In counts 9 and 10, Petitioner burglarized apartment 2211 on October 25, 2004, and, from that apartment, stole Ritalin pills from Claire Steinbraker. In counts 13–15, Petitioner burglarized apartment 2101 on November 12, 2004, and stole a glass pipe from Sherri Magaraci. While the State suggests that Petitioner may have committed all of the burglaries for the same purpose, to support his drug habit, the language of § 10–107 does not contain the word "purpose;" it contains the phrase, "set of facts." None of the burglaries had the same set of facts. While Petitioner allegedly visited some of the apartments more than once over the two-month period, and allegedly visited more than one apartment on certain dates, the facts as alleged differed, at least to some degree, for each burglary. Petitioner allegedly committed nine separate burglaries at eight different apartments on seven different days, over a period of time lasting more than two months. We therefore conclude that the burglaries contained different sets of facts. Because each of the burglaries charged in counts 1–12 and 16–17 constitutes an incident that was separate from that in counts 13–15, we hold that they did not comprise a single unit.

The State asserts that the Legislature intended to include continuous crimes in § 10–107, when it stated that if a person is not entitled to expungement of one charge in a unit, he or she is not entitled to expungement of any other charge in the unit. We conclude, however, that the Legislature clearly articulated, in § 10–107, that a unit consists only of charges that arise out of the same incident, transaction, or set of facts. We therefore reject the State's claim that the Legislature intended for a continuing scheme to also constitute a unit for purposes of expungement because nowhere in that provision does the Legislature mention the phrase "continuing scheme" or use any language to imply such a meaning. Black's Law Dictionary defines "continuing" as "[u]ninterrupted; persisting." BLACK'S LAW DICTIONARY 339 (8th ed.1999). If the Legislature intended to limit expungement of charges in cases where the charges were part of a continuing scheme, then it certainly could have included such language. Instead, it included language to the contrary, because, as explained above, an "incident" means a separate, distinct occurrence. The Legislature even chose to title § 10–107 "Charges arising from the same incident, transaction, or set of facts," which provides additional support for this conclusion. " 'We cannot assume authority to read into the [Statute] what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists. Therefore, the strongly preferred norm of statutory interpretation is to effectuate the plain language of the statutory text.' " *Chow*, 393 Md. at 444, 903 A.2d at 395 (citations omitted). Because the Legislature spoke of a unit only as charges arising from the same incident, transaction, or set of facts and made no mention of a continuous scheme, we will not read such an assumption into the language of the statute.[5]

---

5. We note that our research reveals no cases where this Court has ever concluded that burglary could constitute a continuing crime or transaction. We need not reach the merits on this point because we conclude that the plain language of § 10–107 is unambiguous, and the Legislature made no mention of a continuous scheme when it enacted § 10–107.

The language of § 10–107 is clear and its meaning unambiguous, such that we need not, and should not, look beyond that provision. *See Jones v. State,* 336 Md. at 261, 647 A.2d at 1206–07. Nonetheless, we will address the parties' contentions that Maryland Rule 4–203(a) provides support for their views. Maryland Rule 4–203(a) provides guidance for the State as to the manner in which offenses should be joined in a charging document. That Rule provides that the State can choose to charge two or more offenses in separate counts of the same charging document "if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together *or* constituting parts of a common scheme or plan" (emphasis added). We again agree with Petitioner and conclude that Maryland Rule 4–203(a) is written in the disjunctive, and therefore distinguishes between charges arising out of the same act or transaction and charges that are part of a continuing scheme. We do not agree with the State that the language of Rule 4–203(a) somehow demonstrates that the Legislature intended for a unit and continuing scheme to be synonymous or to suggest that because of this Rule, we must construe broadly the Legislature's use of the word "unit."

The State argues that Petitioner does not, and cannot, contend that the charges against him were not properly joined into a single charging document. The State contends that the burglaries were properly consolidated and that they also constituted a unit that arose from the same incident, transaction, or set of facts. To support this contention, the State asserts that all of the burglaries occurred within two months, in only two apartment buildings, that Petitioner took from each burglarized apartment either drugs, drug paraphernalia or money to support his drug addition, and that he confessed to the burglaries. We reject this contention because Maryland Rule 4–203(a) provides that the State may list all of the counts in one indictment if the counts were "of the same or similar character." Permission to consolidate offenses of the same or similar character does not necessarily satisfy the definition of "unit" for purposes of expungement.

We also are not persuaded by the State's argument that Maryland Rule 4–203(a) provides the State with the authority to determine whether the charges comprise a unit, simply based on how the State chooses to organize the charges-together in one indictment, or separately. Petitioner asserts that if we read § 10–107 to mean that all charges contained in one indictment constitute one unit, then we would be allowing the State to affect whether a defendant would be entitled to an expungement simply by changing the grouping of counts, and charging under one indictment when it would be just as permissible to charge under more than one charging document. Petitioner contends that giving the State such power would abrogate the principles of § 10–107 and Maryland Rule 4–203(a) and would usurp the legislative power. We agree with Petitioner on this point. Whether the State should have consolidated all of the charges in one indictment is neither an issue before this Court nor is it relevant to our analysis. Whether the State chose to list the charges separately or consolidate them in one indictment does not change our analysis. If the charges do not comprise a unit, then a guilty plea to one count does not preclude expungement of the other counts, regardless of how the State chose to organize the charges.

In addition, the State argues that because we recognized in *Cooksey,* 359 Md. 1, 752 A.2d 606, that a transaction is not limited to a single act, but may be in the nature of a continuing transaction involving more than one act, we should read the language of § 10–107 to preclude expungement when charges are part of a continuing scheme. As we already mentioned, the principles of statutory interpretation direct us to end our inquiry with the clear language of the statute when the statute is not ambiguous. *Marriott Employees Fed. Credit Union v. MVA,* 346 Md. 437, 445, 697 A.2d 455, 458 (1997). In any event, this case is distinguishable from *Cooksey* for three reasons. Thus, *Cooksey* is not dispositive to our analysis.

First, *Cooksey* dealt specifically with sexual child abuse and other related sexual offenses, not burglary offenses. Second,

*Cooksey* did not involve the criminal expungement law. Furthermore, *Cooksey* focused on whether the State could bundle a number of single-act offenses into the same *count.* To the contrary, this case hinges on whether the State's inclusion of numerous burglary and theft counts in one *indictment,* means that a guilty plea to one count precludes expungement of the other counts. The State did not try to bundle all of the burglary and theft charges and the one possession of paraphernalia charge into one count; the State separated each of Petitioner's alleged offenses into individual counts. *Cooksey* neither addressed nor resolved the problem at issue in this case. We therefore reject the State's argument that *Cooksey* provides guidance to us on this point because it does not discuss whether numerous counts of burglary could constitute a single transaction and did not involve expungement of charges from a criminal record.

Lastly, the State suggests that because Petitioner pled guilty to count 13, his record has already been marred by a criminal conviction for purposes of employment and applying for admission to academic institutions, so that he no longer needs to have the remaining 14 counts expunged. On these grounds, the State contends that the purpose of § 10–109 is rendered nugatory by Petitioner's guilty plea to count 13. We do not agree. While Petitioner's guilty plea to count 13 may have already "marred" his record, we do not believe that the purpose of § 10–105, § 10–107, or § 10–109 is as the State suggests. Nowhere in the context of these provisions does the Legislature provide that once an individual has a criminal record, he is no longer entitled to have expunged any other criminal charges because his record is "marred" for purposes of employment or applying for admission to an educational institution. Instead, the clear language of § 10–107 demonstrates that Petitioner is still entitled to have expunged the remaining 14 counts, from his record, so that those additional charges will not affect negatively his job search or application for admission to an educational institution in the future. It is obvious that a record with 17 criminal counts will be more

detrimental to a person's job search or application to an academic institution than a record with 3 criminal counts.

## CONCLUSION

We conclude that the Circuit Court was incorrect to reject Petitioner's request for expungement of counts 1–12 and 16–17 and was correct to reject Petitioner's request for expungement of counts 14 and 15. Because the burglary charges were separate incidents, transactions, or involved different facts, they constitute nine separate units. Based on the plain language of § 10–107, it is clear that the General Assembly intended that a unit be comprised only of charges that arise from the same incident, transaction, or set of facts, and not a continuous scheme. When the charges do not comprise a single unit, a guilty plea to one of the counts precludes expungement only of those counts contained in the same unit, and does not preclude expungement of the counts contained in any other units.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO EXPUNGE COUNTS 1–12 AND 16–17 OF THE CHARGING DOCUMENT. BALTIMORE COUNTY TO PAY THE COSTS IN THIS COURT.**